**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO**

**PAUL KEITH REYES**,

      Plaintiff,

vs.                                                             No. 09cv69 MCA/WDS

**UNKNOWN AGENT (Badge 101),
E.B. YOUNG, GUY SULLENGER**,

      Defendants.

**MEMORANDUM OPINION AND ORDER**

**THIS MATTER** comes before the Court on *pro se* Plaintiff Paul Keith Reyes' *Request for Oral Argument on Defendants Guy Sullengers Answer to Complaint; and Motion to Strike; Motion for Default Judgement* [Doc. 14], filed July 28, 2009, and *Defendant Guy Sullenger's Motion for Summary Judgment* [Doc. 16], filed September 10, 2009. Having considered the parties' submissions, the relevant law, and otherwise being fully advised in the premises, the Court denies Plaintiff's request/motions and grants Defendant's motion for summary judgment.

**I. BACKGROUND**

The following facts are either undisputed or are viewed in a light most favorable to *pro se* Plaintiff Paul Keith Reyes. See Carter v. United States, 2009 WL 4269595, at *1 (D.N.M. Oct. 30, 2009) (*citing* Anderson v. Suiters, 499 F.3d 1228, 1232 (10th Cir.2007)).

On January 26, 2009, Plaintiff Paul Keith Reyes filed his *Civil Rights Complaint Pursuant to 42 U.S.C. § 1983*, using the preprinted form supplied by this district's Clerk of Court. Named as defendants are Guy Sullenger, E.B. Young, and "Unknown Agent (101 Badge)." [See Doc. 1]. Invoking jurisdiction under 42 U.S.C. § 4762 as well as § 1983, Plaintiff appears to contend that he was entrapped into committing the offense of driving with (1) a suspended or revoked driver's license; (2) an expired insurance card; and (3) expired registration. [See generally id.].

As Plaintiff recites the facts, it was autumn of 2008 when he and his father were at a tree-cutting site within the Cibola National Forest. According to Plaintiff, the men were directed by an agent of the United States Forest Service (that agent is not a party here) to leave the site no later than a certain time of day or else "law enforcement would be used." [Doc. 1 at 2]. Plaintiff and his father complied. However, as they were driving away from the site, Plaintiff was stopped by Defendants Guy Sullenger, E.B. White, and "Unknown Agent 101 (Badge)," at which point he was issued citations for driving with a suspended or revoked driver's license, as well as with expired insurance and registration. Plaintiff's entrapment theory appears to rest upon his belief that, had he not been ordered out of the tree-cutting site in the first instance, he would not have been driving and, therefore, would not have been in violation of the traffic-code provisions for which he was cited by Sergeant Sullenger. As Plaintiff explains, "[a]s a result of the original orders with the threat of law enforcement[, t]he Mountainair police along with the agents forced the plaintiff to commit the crime[, and t]he original orders to be out of the wood cutting site entrapped the plaintiff

2

to drive. . . ." [Doc. 1 at 2-3].

According to Sergeant Sullenger, he was on patrol when he was stopped by "an unknown individual" who reported that he had passed a truck that was hauling a trailer and swerving in the roadway. This individual also reported that the trailer was on its rims, which was causing sparks to fly as the vehicles moved ahead. [Doc. 16; Exh, 2, affidavit of Guy Sullenger at 1]. Sergeant Sullenger subsequently located and stopped the truck, which was being driven by Plaintiff's father. As Sergeant Sullenger was speaking with Plaintiff's father, Plaintiff pulled up in his own vehicle, a Ford pickup, and became confrontational with Sergeant Sullenger. It was at this point, maintains Sergeant Sullenger, that he noticed that the Ford's registration tag was expired. After questioning Plaintiff and "running his name through the system," Sergeant Sullenger learned that Plaintiff's driver's license had been suspended and that he lacked proof of insurance. [Id. at 1-2]. Sergeant Sullenger then issued three citations to Plaintiff for (1) driving with a suspended license; (2) expired registration, and (3) no insurance. [See Doc. 16; Exh. 1].

On the same day that Plaintiff filed his *Complaint*, he successfully moved to proceed *in forma pauperis* (IFP). [See Docs. 3, 5]. The docket reflects that, while summons was returned unexecuted as to E.B. Young and "Unknown Agent 101," Sergeant Sullenger was served on June 2, 2009, making his *Answer* to Plaintiff's *Complaint* due on June 22, 2009. [See Docs. 7, 8, 9]. Sergeant Sullenger, however, did not file his *Answer* until June 30, 2009. [See Doc. 11]. He has explained that he "mistakenly filed his answer within the thirty day state court responsive pleading rule, rather than the federal rule." [Id. at 3].

On July 28, 2009, Plaintiff filed a combined request for oral argument on Sergeant Sullenger's *Answer;* motion to strike the *Answer*; and motion for default judgment pursuant to Fed.R.Civ.P. 55. The sole basis for Plaintiff's three requests appears to be what he has termed Sergeant Sullenger's "failure to plead and timely defend." [Doc. 14 at 3]. On August 6, 2009, Sergeant Sullenger filed his *Response* to Plaintiff's requests and, on September 10, 2009, filed *Defendant Guy Sullenger's Motion for Summary Judgment*. [See Docs. 15, 16]. Plaintiff has filed neither a *Reply* to Sergeant's Sullenger's *Response*, nor a *Response* to Sergeant Sullenger's summary-judgment motion.

## II. ANALYSIS

### A. *Request for Oral Argument on Defendants Guy Sullengers Answer to Complaint; and Motion to Strike; Motion for Default Judgement* [Doc. 14]

Pursuant to Rule 55(a) of the Federal Rules of Civil Procedure, "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend as provided by these rules and that fact is made to appear by affidavit or otherwise, *the clerk shall enter the party's default*." Fed.R.Civ.P. 55(a) (emphasis added). The clerk's entry of default is not the same as the Court's default judgment; to be sure, the clerk's entry of default "under Rule 55(a) [is] a prerequisite for the entry of a default judgment under Rule 55(b)(1)." Garrett v. Seymour, 217 Fed.Appx. 835, 838 (10th Cir. 2007) (unpublished opinion).

A two-step process exists for an individual who seeks entry of a default judgment in his favor.

> First, the party wishing to obtain a default judgment must apprise the court that the opposing party has failed to plead or otherwise defend by requesting "by affidavit or otherwise" that the clerk enter default on the docket. Fed.R.Civ.P. 55(a); see also Meehan v. Snow, 652 F.2d 274, 276 (2d Cir.1981). Second, following an entry of default by the clerk, "the party entitled to a judgment by default shall apply to the court therefor." Fed.R.Civ.P. 55(b)(2); see also Meehan, 652 F.2d at 276.

Williams v. Smithson, 57 F.3d 1081, *1 (10th Cir. 1995).

In this case, while Plaintiff has moved *the Court* for a default judgment, he has failed to request that *the clerk* first enter default against Sergeant Sullenger. See Williams, 57 F.3d at *1 (district court properly exercised discretion not to enter default judgment in favor of *pro se* plaintiff where plaintiff claimed entitlement to default judgment without first having requested clerk's entry of default). Plaintiff's failure to comply with the procedural requirements for securing a default judgment dooms his request.

Aside from the procedural deficiencies, there is no evidence (nor is there an allegation) that Plaintiff has been at all prejudiced as a result of Sergeant Sullenger's late filing of his *Answer*. To be sure, actual prejudice is a factor to be considered in determining the propriety of a default judgment. See F.D.I.C. v. Daily, 973 F.2d 1525, 1529 (10th Cir. 1992) (explaining that (1) degree of actual prejudice to opposing party; (2) amount of interference with judicial process; and (3) litigant's culpability, are factors to be considered when determining whether default judgment is warranted); see also Gulley v. Orr, 905 F.2d

5

1383, 1386 (10th Cir. 1990) (in light of (1) strong preference for disposition of litigation on merits; and (2) lack of any allegation of prejudice to plaintiff, district court's denial of plaintiff's motion for default judgment was not abuse of discretion). Because two of the three defendants in this case appear not to have even been served yet, it is difficult to understand how Sergeant Sullenger's eight-day delay in filing his *Answer* has prejudiced Plaintiff.

Additionally, this Court possesses discretion to permit the late filing of an *Answer* if persuaded that the delay was caused by "excusable neglect." See Fed.R.Civ.P. 6(b). Moreover, it is not an abuse of discretion to allow an out-of-time filing (and deny a motion for default judgment) where "[t]he record demonstrates that [the] late filings were due to mistake, inadvertence or carelessness and not to bad faith on defendant['s] part." Panis v. Mission Hills Bank, N.A., 60 F.3d 1486, 1494 (10th Cir. 1995). In this case, Sergeant Sullenger has explained that his untimely filing was due to the fact that he mistakenly followed NMRA Rule 1-012, which provides a 30-day post-service period in which to file an *Answer*. See McNeill v. Burlington Res. Oil & Gas Co., 153 P.3d 46, 50 (N.M.App. 2006) (confirming 30-day time frame). By contrast, Fed.R.Civ.P. 12(a) directs a defendant to serve his *Answer* "within 20 days after being served with the summons and complaint. . . ." Fed.R.Civ.P. 12(a)(1)(A)(i).

In this case, the Court finds that, while Sergeant Sullenger may have acted inadvertently or carelessly, there is no evidence that he acted in bad faith. See Panis, 60 F.3d at 1494. Accordingly, the Court accepts Sergeant Sullenger's late-filed *Answer* and denies

Plaintiff's (1) request for oral argument on the *Answer*; (2) motion to strike the *Answer*; and (3) motion for default judgment. [See Doc. 14].

### B.      *Defendant Guy Sullenger's Motion for Summary Judgment* **[Doc. 16]**

Sergeant Sullenger has moved for summary judgment pursuant to Fed.R.Civ.P. 56, on grounds including that he is entitled to qualified immunity with respect to Plaintiff's claims against him. [Doc. 16 at 7-10]. Plaintiff has not responded to Sergeant Sullenger's summary-judgment motion.

### 1.      Summary Judgment; Fed.R.Civ.P. 56

Summary judgment under Fed.R.Civ.P. 56(c) "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). "When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading. . . ." Fed.R.Civ.P. 56(e). Rather, "the adverse party's response . . . must set forth specific facts showing that there is a genuine issue for trial." Id. Judgment is appropriate "as a matter of law" if the nonmoving party has failed to make an adequate showing on an essential element of its case, as to which it has the burden of proof at trial. See Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Lopez v. LeMaster, 172 F.3d 756, 759 (10th Cir. 1999).

In order to warrant consideration by the Court, the factual materials accompanying a motion for summary judgment must be admissible or usable at trial (although they do not

necessarily need to be presented in a form admissible at trial). See Celotex, 477 U.S. at 324. It is not the court's role, however, to weigh the evidence, assess the credibility of witnesses, or make factual findings in ruling on a motion for summary judgment. Rather, the Court assumes the evidence of the non-moving party to be true, resolves all doubts against the moving party, construes all evidence in the light most favorable to the non-moving party, and draws all reasonable inferences in the non-moving party's favor. See Hunt v. Cromartie, 526 U.S. 541, 551-52 (1999).

### 2. 42 U.S.C. § 1983 and the Defense of Qualified Immunity

Plaintiff has brought this action pursuant to 42 U.S.C. § 1983. [See Doc. 1]. Section 1983 of Title 42 of the United States Code provides, in relevant part, that

> [e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983. Section 1983 is not an independent source of substantive rights; rather it is a mechanism for enforcing federal rights conferred elsewhere, see Albright v. Oliver, 510 U.S. 269, 271 (1994), and provides a remedy "for any person who has been deprived of rights secured by the Constitution or laws of the United States by a person acting under color of law." Curley v. Klem, 298 F.3d 271, 277 (3rd Cir.2002). Accordingly, an analysis of a plaintiff's federal civil-rights claim necessarily begins by identifying the specific

constitutional right or rights allegedly infringed.  Graham v. Connor, 490 U.S. 386, 393-94 (1989).

In this case, while not referring to any particular constitutional right or rights, Plaintiff appears to contend that he was entrapped, or induced into committing the traffic offenses for which Sergeant Sullenger cited him, as a result of having been instructed to leave the Cibola National Forest tree-cutting site by a certain hour.  His theory of the case appears to be that, had he not been made to drive away from the forest, he necessarily would not have committed the traffic offenses in question.  [See Doc. 1 at 1 (captioning complaint as "Entrapment Complaint" and charging that "[t]he Mountainair police . . . *forced* the Plaintiff to commit the crime"); at 6 (explaining that, in being ordered out of the forest, "Plaintiff is now *entrapped* to drive again [and that] he has committed the crime in question . . . only because of the *instigation and inducement* by a government officer"); and at 3 (quoting from Sorrells v. United States, 287 U.S. 435 (1932) and Sherman v. United States, 356 U.S. 369 (1958), both of which discuss the *defense* of entrapment) (all emphasis added).

When a defendant asserts the defense of qualified immunity, the burden shifts to the plaintiff, who must first establish that the defendant violated a constitutional right.  Cortez v. McCauley, 478 F.3d 1108, 1114 (10th Cir. 2007) (*citing* Reynolds v. Powell, 370 F.3d 1028, 1030 (10th Cir.2004)).  "If no constitutional right would have been violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity."  Saucier v. Katz, 533 U.S. 194, 201 (2001).  If, however, a violation has been shown, the next step in the qualified- immunity sequence is to ask whether the constitutional

9

right was clearly established when the alleged conduct occurred. See Cortez, 478 F.3d at 1114. "This inquiry, it is vital to note, must be undertaken in light of the specific context of the case, not as a broad general proposition . . . ." Saucier, 533 U.S. at 201. Indeed, "[t]he relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." Id. at 202. This is not to say, however, that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful. Rather, it is to say that the unlawfulness must be apparent in light of pre-existing law. Hope v. Pelzer, 536 U.S. 730, 739 (2002). While courts are no longer required to follow Saucier's two-step protocol in sequence, the United States Supreme Court "continue[s] to recognize that it is often beneficial[]" to do so. Pearson v. Callahan, 129 S.Ct. 808, 818 (2009); see also Poolaw v. Marcantel, 565 F.3d 721, 728 n.5 (10th Cir. 2009) (explaining that, in Pearson, the Supreme Court made Saucier's "order of battle" discretionary).

For a right to be clearly established, there must be a Supreme Court or Tenth Circuit decision on point, or the clearly established weight of authority from other courts must be as the plaintiff maintains. Farmer v. Perrill, 288 F.3d 1254, 1259 (10th Cir. 2002). An official can still be on notice that his conduct violates established law even in novel factual circumstances; the "salient question" is whether the state of the law at the relevant time gave him fair warning that the conduct at issue was unconstitutional. See Hope, 536 U.S. at 741. By contrast, summary judgment based on qualified immunity is appropriate if the law did not put the defendant on notice that his conduct was clearly unlawful. Saucier, 533 U.S. at 202.

If, however, the plaintiff successfully establishes both a violation of a constitutional right and that the right was clearly established at the time of the alleged conduct, the burden shifts to the defendant, who must prove that there are no genuine issues of material fact and that the defendant is entitled to judgment as a matter of law.  Olsen v. Layton Hills Mall, 312 F.3d 1304, 1312 (10th Cir.2002)).  "In the end, therefore, the defendant still bears the normal summary judgment burden of showing that no material facts remain in dispute that would defeat the qualified immunity defense."  Id.

As an initial matter, the Court notes that, under the Local Rules of this district, "[t]he failure of a party to file and serve a response in opposition to a motion within the time prescribed for doing so constitutes consent to grant the motion."  D.N.M.LR-Civ. 7.1(b) (Dec. 1, 2009).  In this case, Plaintiff should have filed a *Response* to Sergeant Sullenger's September 10, 2009 summary-judgment motion not later than September 24, 2009.  See D.N.M.LR-Civ. 7.4(a).  As of January 13, 2010, the Court's electronic docket, CM-ECF, reflects that no *Response* has been filed. [See Dkt. in 09cv69 MCA/WDS].  While a *pro se* litigant's pleadings are to be construed liberally and held to a less stringent standard than formal pleadings drafted by lawyers, *pro se* litigants are nevertheless subject to the same rules of procedure that govern other litigants.  DiCesare v. Stuart, 12 F.3d 973, 979 (10th Cir. 1993) (applying this concept to Fed.R.Civ.P. 4).  Nevertheless, in the interest of completeness, and *because* Plaintiff is proceeding *pro se*, the Court will address the merits of Sergeant Sullenger's qualified-immunity defense rather than summarily enter judgment in his favor because of Plaintiff's procedural deficiencies.

Turning, then, to the substance of the matter, the Court concludes that Sergeant Sullenger is entitled to the entry of summary judgment on the basis of qualified immunity because Plaintiff has not demonstrated the existence of a clearly established right, inasmuch as he has not shown that there is a Supreme Court or Tenth Circuit decision on point, or that the clearly established weight of authority from other courts is as he maintains. See Farmer, 288 F.3d at 1259. To the contrary, Supreme Court and Tenth Circuit decisions, as well as the clearly established weight of authority from other courts, would seem to be precisely the opposite of what Plaintiff maintains, in that it has been fairly uniformly held that a claim of entrapment will not support an action brought pursuant to 42 U.S.C. § 1983. In United States v. Russell, the Supreme Court rejected a criminal defendant's contention that his conviction "violate[d] the fundamental principles of due process[]" explaining that the government's conduct in that case "violated no independent constitutional right of the [defendant]." United States v. Russell, 411 U.S. 423, 430 (1973). While the Court left open the possibility that it might "some day be presented with a situation in which the conduct of law enforcement agents is so outrageous that due process principles would absolutely bar the government from invoking judicial processes to obtain a conviction," it nevertheless concluded that Russell was "distinctly not of that breed." Id. at 431-432.

While Russell was a criminal case, the federal circuits have largely followed suit in concluding that entrapment lacks a constitutional dimension. See, e.g., Stokes v. Gann, 498 F.3d 483, 485 (5th Cir. 2007) ("[E]ntrapment alone is not a constitutional violation."); Stobaugh v. Wood, 107 F.3d 17, *2 (9th Cir. 1997) (entrapment argument was not grounds

12

for granting habeas petition where no showing that government's conduct was so outrageous as to deprive petitioner of his right to due process); Smith v. Lang, 114 F.3d 1192, *2 (7th Cir. 1997) (rejecting plaintiff's entrapment-based 42 U.S.C. § 1983 claim and explaining that the Seventh Circuit "has interpreted Russell as presenting an extremely narrow opportunity . . . to challenge government conduct."); DiBlasio v. City of New York, 102 F.3d 654, 656 (2nd Cir. 1996) ("Entrapment . . . is not a constitutional offense."); Giovanetti v. Tomasi, 25 F.3d 1048, *2 (6th Cir. 1994) ("[N]o courts that we are aware of have authorized [use of an entrapment defense] in a civil action or as the basis for a section 1983 action."); Stevenson v. Bales, 986 F.2d 1429, *1 (10th Cir. 1993) (affirming dismissal of plaintiff's 42 U.S.C. § 1983 on grounds including that "entrapment is not a constitutional violation"); Jones v. Bombeck, 375 F.2d 737, 738 (3rd Cir. 1967) (in 42 U.S.C. § 1983, explaining that "[w]hile entrapment may be a proper defense in a criminal action, a police officer's participation in such activity does not constitute a constitutional violation."). Sergeant Sullenger is entitled to entry of summary judgment in his favor on the ground of qualified immunity.

### C. Plaintiff's Action Vis-a-Vis the Two Unserved Defendants; *Sua Sponte* Dismissal

As stated previously, Sergeant Sullenger was the only defendant who was served with process in this matter. Summons was returned unexecuted as to the other two defendants. With respect to Defendant E.B. Young, the "Remarks" section of the *Process Receipt and Return* that was served by the United States Marshals Service states, "No officer E.B. Young employed by Mountainair Police Dept." [Doc. 9 at 1]. With respect to Defendant "Unknown

13

Agent (Badge 101)," summons was returned unexecuted because the serving marshal was "unable to locate unknown agent." [Doc. 8 at 3].

While certainly one option available to this Court is to direct Plaintiff to show cause why the matter should not be dismissed for failure to effect service on Defendants E.B. Young and "Unknown Agent (Badge 101)" and/or for failure to prosecute, another option is simply to dismiss the *Complaint sua sponte* for failure to state a claim. To be sure, the Tenth Circuit has expressly held that a district court may dismiss *sua sponte* a *pro se* complaint for failure to state a claim when it is "patently obvious that the plaintiff could not prevail on the facts alleged . . . and allowing him an opportunity to amend his complaint would be futile" McKinney v. State of Okl., Dept. of Human Servs., Shawnee OK, 925 F.2d 363, 365 (10th Cir. 1991); accord Schrader v. Turner, 338 Fed.Appx. 761 (10th Cir. 2009).

Additionally, where, as here, a plaintiff is proceeding IFP, "a court 'may dismiss the case if . . . satisfied that the action is frivolous. . . .'" Hall v. Bellmon, 935 F.2d 1106, 1108 (10th Cir. 1991) (*quoting* 28 U.S.C. § 1915(d)). The reasoning is that the *in forma pauperis* statute is designed to ensure that indigent litigants have meaningful access to the federal courts and, toward that end, allows such a litigant "to commence [an] action in federal court *in forma pauperis* by filing in good faith an affidavit stating, *inter alia*, that he is unable to pay the costs of the lawsuit." Neitzke v. Williams, 490 U.S. 319, 324 (1989). However, because

> a litigant whose filing fees and court costs are assumed by the
> public, unlike a paying litigant, lacks an economic incentive to
> refrain from filing frivolous, malicious, or repetitive lawsuits

> . . . § 1915(d)[1] authorizes federal courts to dismiss a claim filed *in forma pauperis* "if the allegation of poverty is untrue, or if satisfied that the action is frivolous or malicious." Dismissals on these grounds are often made *sua sponte* prior to the issuance of process, so as to spare prospective defendants the inconvenience and expense of answering such complaints.

Id. In Neitzke, the Supreme Court defined a frivolous complaint as one that "lacks an arguable basis either in law or in fact." Id. at 325.

While there is "considerable" overlap between the standard for dismissal for failure to state a claim (Fed.R.Civ.P. 12(b)(6)), and the standard for dismissal for frivolity (28 U.S.C. § 1915(e)(2)), the provisions "were devised to service distinctive goals, and . . . it does not follow that a complaint which falls afoul of the former standard will invariably fall afoul of the latter." Neitzke, 490 U.S. at 326. Rule 12(b)(6) contemplates a procedure that (1) operates on the assumption of the truth of the *Complaint*'s factual assertions; (2) authorizes the dismissal of a claim on the basis of a dispositive issue of law; and (3) mandates dismissal where it is clear that no relief could be granted under any set of provable facts consistent with the allegations, without regard to whether the claim "is based on an outlandish legal theory or on a close but unavailing one." Id. at 327. What Rule 12(b)(6) does not allow, however, is a dismissal "based on a judge's disbelief of a complaint's factual allegations." Id.

By contrast, because § 1915(e)(2) serves to (1) discourage the filing of baseless lawsuits; (2) minimize the waste of judicial resources; and (3) prevent public filings-related

---

[1] In 1996, 28 U.S.C. § 1915(d) was recodified as § 1915(e)(2).

15

expenses that are not incurred in non-IFP litigation, "the statute accords judges not only the authority to dismiss a claim based on an indisputably meritless legal theory, but also the unusual power to pierce the veil of the complaint's factual allegations and dismiss those claims whose factual contentions are clearly baseless." Neitzke, 490 U.S. at 327.  By way of example, the Supreme Court has explained that a claim based on an "indisputably meritless legal theory" includes one for the "infringement of a legal interest which clearly does not exist."  Id.

In this case, the Court concludes that the claim for entrapment, as set forth in Plaintiff's *Complaint*, is based on an indisputably meritless legal theory in that it alleges the infringement of a legal interest that clearly does not exist, *to wit*, a constitutional right to be free from government entrapment.  As explained in Section II.B.2. above, and with reference to authority from numerous federal circuits, entrapment does not amount to a constitutional violation and cannot serve as the basis for a 42 U.S.C. § 1983 action.  See Stevenson, 986 F.2d at *1; see also Giovanetti, 25 F.3d at *2.  Plaintiff's *Complaint* is frivolous; the *Complaint* will therefore be dismissed pursuant to 28 U.S.C. § 1915(e).[2]

---

[2] In the alternative, the Court concludes, for substantially the same reasons, that Plaintiff's *Complaint* also is dismissable pursuant to Fed.R.Civ.P. 12(b)(6).  Because Plaintiff claims the infringement of a non-existent legal right, even taking as true the allegations of the *Complaint*, the *Complaint* simply is not plausible on its face.  See Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 569 (2007) (In order to withstand a motion to dismiss made pursuant to Fed.R.Civ.P. 12(b)(6), a complaint must contain "enough facts to state a claim to relief that is plausible on its face."); see also Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949-50 (2009) (only a complaint that states a plausible claim for relief survives dismissal).

## **III. CONCLUSION**

As a result of Plaintiff's failure to comply with the procedure for securing an entry of default by the Clerk of Court, and because of the strong preference for resolving cases on their merits as well as the fact that Plaintiff has not actually been prejudiced by Sergeant Sullenger's delayed filing of his *Answer*, Plaintiff's motion for default judgment (as well as all other requests accompanying that motion) will be denied.  Additionally, because Plaintiff has failed to demonstrate that one or more of his clearly established constitutional rights was violated, Sergeant Sullenger's motion for summary judgment on the basis of qualified immunity will be granted.  Finally, because the Court concludes that Plaintiff's *Complaint* is frivolous, the *Complaint* will be dismissed pursuant to 28 U.S.C. § 1915(e)(2).

**IT IS, THEREFORE, ORDERED** that Plaintiff Paul Keith Reyes' *Request for Oral Argument on Defendants Guy Sullengers Answer to Complaint; and Motion to Strike; Motion for Default Judgement* [Doc. 14] is **DENIED**;

**IT IS FURTHER ORDERED** that *Defendant Guy Sullenger's Motion for Summary Judgment* [Doc. 16] is **GRANTED**;

**IT IS FURTHER ORDERED** that Plaintiff Paul Keith Reyes' *Civil Rights Complaint Pursuant to 42 U.S.C. § 1983* be and hereby is **DISMISSED in its ENTIRETY**.

**SO ORDERED** this 13th day of January, 2010, in Albuquerque, New Mexico.

_____
**M. CHRISTINA ARMIJO**
United States District Judge